UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| Carla Yeager, Individually, Kayla M. Yeager, Individually and as Mother and Special Administrator of the Estates of M.L.L.S. and B.D.S., and Dawn Summers, Personal Representative of the Estate of Steven J. Summers | ) ) ) ) ) ) | |
| Plaintiffs | ) ) ) | CASE NO. 4:15-CV-175 RLY-DML |
| vs. | ) ) | |
| EVENFLO COMPANY, INC., a Delaware Corporation, Defendant. | ) ) ) ) ) ) | |

**EVENFLO COMPANY, INC.'S, MOTIONS IN LIMINE**

COMES NOW Defendant Evenflo Company, Inc. ("Evenflo"), and moves this Court for an *in limine* order prohibiting Plaintiffs, their counsel, and their witnesses from referring to any of the following topics in front of the jury without prior court approval.

## I.   Factual Background[1]

The accident giving rise to this lawsuit occurred on the morning of December 12, 2013, in the eastbound lanes of Interstate 64 in Harrison County, Indiana.  A 2004 Nissan 350Z driven by Troy Krueger was traveling in the westbound lanes of the interstate at about 100 miles per hour when Mr. Krueger lost control, crossed the median and his vehicle entered the eastbound lanes.  The Nissan 350Z struck a 2007 Mercury Mountaineer being driven by Plaintiff Carla

---

[1] Evenflo incorporates by reference the more lengthy factual background contained in Evenflo's Motion to Exclude the Opinions of Dr. Mariusz Ziejewski.  *See* Doc. No. 146 at pp. 3-9.

Yeager.   The impact speed was about 72 miles per hour.   This was an extremely severe accident—more severe than 99.9 percent of the tow-away accidents in the United States.

Plaintiff Kayla Yeager was a passenger in the front seat, and her two daughters M.L.L.S. and B.D.S. were seated in the second row.   Two-year-old M.L.L.S. was seated in an Evenflo Tribute child seat behind the driver's seat, and 11-month-old B.D.S. was seated in an Evenflo Embrace infant seat in the second row center position.   Troy Krueger died as a result of injuries sustained in the accident, as did M.L.L.S. and B.D.S.

The Tribute in which two-year old M.L.L.S. was seated is commonly referred to as a "convertible seat."   It can be used rear-facing with infants and forward-facing when the child is older.   The Tribute is designed to secure children in a five-point harness, which restrains the child's shoulders and waist.   The harness includes a chest clip to help ensure proper initial positioning of the harness.   The Tribute is also equipped with a top tether, a strap which attaches to the vehicle and helps reduce rotation of the seat during a frontal collision as well as "excursion," or forward movement of the seat and child.

The Embrace is a two-piece infant seat, which has a base that can remain in the vehicle, and a "carrier," that can be removed from the base to carry the child outside the vehicle.   It is designed for infants up to 22 lbs.   The carrier can be unlatched from its base by pushing a red release lever, which disengages three latches holding the carrier to the base (two connect with wireforms and one is at the other end).   This lever allows caregivers to easily detach the carrier when exiting the car, leaving the base installed in the vehicle.

The Tribute and Embrace were purchased by the girls' grandmother, Dawn Summers, at a yard sale.   Neither Carla or Kayla Yeager ever possessed or read the instruction manuals for the

child seats and neither one of them is aware of the pre-yard sale purchase or use history of the child seats.

M.L.L.S. and B.D.S. both sustained what are known as atlanto-occipital ("A.O.") dislocations. Due to the extreme accident forces and the manner in which the child restraints were used, the children's torsos came to a sudden stop during the accident, and yet their heads kept moving. The head was pulled away from the cervical spine as a result of the sudden stop. These forces caused dislocation and stretch injuries to the spinal column and spinal cord where the cervical spine meets the skull. These severe upper spinal cord injuries caused the deaths of both children.

In their expert reports, Plaintiffs' experts—Dr. Ziejewski and Mr. Munsell—claimed that chest clip movement caused the shoulders of M.L.L.S. to roll out of the harness, allowing her head to strike the seatback in front of her during the accident. However, in their depositions and subsequent affidavits, it is now undisputed that M.L.L.S.'s shoulders did not roll out of the harness and she did not die as a result to a blow to the head.

Evenflo's position with respect to the Tribute is that the severity of the accident and the failure of Plaintiffs to use the top tether (which allowed greater seat rotation and greater forward excursion of the seat and child) and failure to ensure a snug harness and connection of the child seat to the vehicle, led to a sudden stop of the child's torso and contributed to the fatal A.O. injury to M.L.L.S.

With respect to the Embrace, Evenflo's position is that the red release lever was impacted during the accident and, along with the severe accident forces, most likely caused the detachment of the carrier from the base. Plaintiffs claim that the Embrace is defective because it provides false indicators of latching. Plaintiffs further claim that the carrier detached during the accident

because only one of the two latches was fully engaged before the accident, and the remaining single fully-engaged wireform latch was not strong enough, on its own, to withstand the forces in the accident.

Evenflo's evidence will show that the Embrace is not defective in design and the detachment of the subject Embrace was caused by the extreme accident forces and loose installation of the base.  Slack allowed the Embrace to move forward excessively during the accident and permitted the red release lever to strike the center console, operating with extreme accident forces to release one of the latches.  Evenflo's position is that a loose harness on the child in the carrier and the loose seatbelt connection between the vehicle seatbelt and the base of the Embrace allowed excessive body excursion and loading of the child's cervical spine which, along with the severe accident forces, contributed to cause the fatal A.O. injury to B.D.S.  Moreover, Evenflo's injury causation expert, Dr. Mark Sochor, testified that B.D.S. suffered her A.O. injury prior to any detachment of the carrier from the base, and thus, the fact of detachment played no role in causing the fatal injuries to B.D.S.  Dr. Sochor further testified that rather than increasing the forces on the cervical spine of B.D.S., the detachment actually reduced the forces.

## II.   **Legal Standard**

Evidence that is not relevant is inadmissible.  Fed. R. Evid. 402.  The Seventh Circuit has stated that evidence is not relevant if there is no connection between the evidence and the issues of the case or material facts at issue.  *U.S. v. Westbrook*, 125 F.3d 996, 1007 (7th Cir. 1997) (citing *U.S. v. Mazzanti*, 888 F.2d 1165, 1169 (7th Cir. 1989)).  Evidence is relevant only if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

In the Seventh Circuit, motions *in limine* are useful devices that "streamline trials and settle evidentiary disputes in advance so that trial are not interrupted mid-course for the

consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Trial courts have wide discretion when ruling on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

Even if relevant, evidence may be also excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Evidence is unfairly prejudicial when its admission "makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Young v. Rabideau*, 821 F.2d 373, 377 (7th Cir. 1987) (citing *United States v. Falco*, 727 F.2d 659, 662 (7th Cir. 1984)). Evidence may also be precluded if its probative value is substantially outweighed by a danger of "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III.   Motions in Limine

### 1.   Argument or Evidence That M.L.L.S. Slipped Out or Rolled Out of the Tribute Harness or that Head Contact Played a Role in Her Injuries Should Be Excluded.

Plaintiffs should be precluded from offering any evidence or argument that M.L.L.S.'s injuries were caused by her slipping out or rolling out of the Tribute harness, or that head contact played a role in her injuries. Plaintiffs' injury causation and biomechanics expert, Mariusz Ziejewski, now agrees with the report of the medical examiner that there was physical evidence of shoulder restraint (bruising on the shoulders) and no evidence a blow to the head caused the death of the child.[2, 3]

---

[2] *See* Ziejewski Deposition, Ex. 4 to Motion to Exclude Dr. Ziejewski at 22:12-16; 58:20-22; 59:4-9; 90:19-25, Doc. No. 146-4.

[3] Dr. Ziejewski—like all other medical causation experts in this case—admits that M.L.L.S. and B.D.S. both sustained atlanto-occipital ("A.O.") dislocations. Due to the extreme forces involved in this accident, the children's torsos came to a sudden stop during the accident, and yet their heads kept moving. Their heads tried to pull away from their necks. These forces caused dislocation and stretch injuries to the spinal column and spinal cord where the cervical spine meets the skull. These severe upper spinal cord injuries caused the deaths of both children.

There is no evidence that M.L.L.S.'s shoulders slipped out or rolled out of the Tribute harness during the accident.  In fact, the autopsy report describes physical evidence that her shoulders were restrained and that head contact played no role in the injuries.  Because it is undisputed that M.L.L.S. did not slip or roll out of the Tribute harness, there should be no argument or evidence that any such movements, or head impact, caused her injury.  Such argument or evidence would lack foundation, and would be irrelevant, unfairly prejudicial, and misleading/confusing to the jury.  *See* Fed. R. Evid. 401, 403, 602.  *See also Wilcox v. CSX Trans., Inc.*, No. 1:05-CV-107, 2007 WL 1576708, at *12 (N.D. Ind. May 30, 2007) (granting motion in limine to exclude testimony "that limited ankle dorsi-flexion is a risk factor for plantar faciitis" where there was "no evidence that Plaintiff had any such condition.").

2.      **Argument or Evidence That Either M.L.L.S. or B.D.S. Struck Their Heads During The Accident Should Be Excluded.**

Plaintiffs should be precluded from offering any evidence or argument that either M.L.L.S. or B.D.S. struck their heads during the accident.  The undisputed evidence is that neither child sustained their fatal injuries as a result of a blow to the head.  Indeed, Plaintiffs' medical causation expert testified that the children's injuries were not caused by blows to the head, and that both children suffered an A.O. injury from the inertial (non-contact) forces of their heads being pulled away from their upper cervical spines during this extreme accident.  Therefore, any argument or evidence that either child struck her head is lacking in foundation and would be irrelevant, unfairly prejudicial, mislead the jury, and confuse the issues.  *See* Fed. R. Evid. 401, 403, 602.  *See also Wilcox*, 2007 WL 1576708, at *12.

### 3.   Argument or Evidence That M.L.L.S. or B.D.S. Suffered Conscious Pain and Suffering Should Be Excluded.

Plaintiffs should be precluded from offering any evidence or argument that M.L.L.S. or B.D.S. suffered conscious pain and suffering.  Plaintiffs have presented no medical expert testimony that either M.L.L.S. or B.D.S. suffered conscious pain and suffering.  Moreover, Plaintiffs have not pleaded that either M.L.L.S. or B.D.S. suffered conscious pain and suffering.  M.L.L.S. died immediately at the scene of the accident and B.D.S. was unconscious after the accident and remained in an unconscious state until life support was removed several days later.

In addition, under Indiana law, where a decedent dies from injuries received in an accident, the Estate is foreclosed from raising a personal injury claim seeking damages for pain and suffering endured before the death.  *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind. Ct. App. 1999).  "[A] tortfeasor may be held liable under *either* the Wrongful Death Statute or the Survivorship Statute, *but not both.*  If the victim dies from injuries sustained in the accident, the case falls under the Wrongful Death Statute." *Id.* (emphasis in original).  Under the Wrongful Death statute, the estate can "recover only [the decedent's] medical and funeral expenses plus any other pecuniary or other loss suffered by her survivors." *Id.*  The estate cannot recover for the decedent's pain and suffering under the Wrongful Death Statute. *Id.*; *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1458 (7th Cir. 1996).

Here, the minor children died from injuries sustained in the accident, and the claims of the estate therefore fall under the Wrongful Death Statute, which does not allow recovery for pain and suffering.  Thus, any reference to pain and suffering would be irrelevant and serve only to prejudice the defendants, in contravention of Fed. R. Civ. P. 401 and 403.  More fundamentally, there is no evidence that either child experienced pain and suffering, and any

reference to the issue would be without foundation and unfairly prejudicial to the defendants. *See* Fed. R. Evid. 401, 403, 602.

**4.** **Comments or References that Kayla Yeager and Carla Yeager Were Not Seriously Injured in the Accident Used to Prove The Child Seats Are Defective Should Be Excluded.**

Plaintiffs should be precluded from offering any argument or evidence that the fact that Plaintiffs Carla and Kayla Yeager did not sustain severe injuries in the accident somehow proves the children should have survived the accident or the child seats were defective.

In this case, Carla Yeager was driving the Mercury Mountaineer, and Kayla Yeager was the right front passenger.  M.L.L.S. (2 years old) and B.D.S. (11 months old) were passengers in the second row of the vehicle.  Plaintiffs' experts agree that children's bodies are not as well developed as adults and thus are more susceptible to injuries during a motor vehicle accident. Additionally, the adults had more crash protection systems (i.e. airbags) to prevent the type of injuries sustained by the children.  They also had seatbelts.  There is no evidence those safety devices did not perform properly.  In addition, there is no evidence that the adults had the buildup of momentum and sudden stop experienced by the children.  The adults were not exposed to the same severe forces to their cervical spines as the children.  Thus, the circumstances related to the children's injuries are not substantially similar to the circumstances related to what happened to the adults in the accidents.

Plaintiffs' expert, Dr. Mariusz Ziejewski, agrees that a child's cervical spine and body are not as well developed as that of an adult because the muscles, ligaments, and vertebrae are not as well developed.[4]  Additionally, Dr. Ziejewski testified that a child's head is bigger relative to the

---

[4] Ziejewski Deposition, Ex. 4 to Motion to Exclude Dr. Ziejewski at 49:16-25.  *See* Doc. No. 146-4.

8

body than that of an adult.[5]  Dr. Ziejewski agreed that a child is more susceptible to the type of

A.O. injury that M.L.L.S. and B.D.S. sustained.[6]

Moreover, the adults, who were seated in the front seat, had the benefit of other crash

protection systems, such as the vehicle airbag system and seatbelts, that reduced the amount of

forward excursion and buildup of momentum and prevented the type of A.O. injuries sustained

by the children.  Thus, the injuries (or lack thereof) of the adults are not the product of a

substantially similar set of circumstances.

Before evidence of other incidents or lack thereof can be admitted, the proponent must

establish substantial similarity.  *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th

Cir. 1988).  Courts have held that evidence of injuries (or lack thereof) to other vehicle occupants

is not admissible to prove a product defect.  For example, in *J.B. Hunt Transport, Inc., v.

General Motors Corp.*, 243 F.3d 441 (8th Cir. 2001), J.B. Hunt Transport, Inc., a trucking

company which had settled with a severely injured passenger in an automobile accident, brought

a contribution claim against General Motors and a component seat manufacturer.  J.B. Hunt

alleged the passenger seatback was poorly designed and caused a spinal cord injury that should

not have occurred when the J.B. Hunt truck struck the plaintiffs' vehicle.  After a jury verdict in

favor of General Motors and the component seat manufacturer, J.B. Hunt appealed.

Among the issues on appeal was whether the trial court erred in precluding evidence that

the driver was less severely injured than the passenger.  In affirming the judgment of the trial

court, the Eighth Circuit confirmed that the evidence of the injuries to the driver were not

admissible because there had been no demonstration that the circumstances giving rise to the

driver's injuries were substantially similar to the circumstances giving rise to the injuries to the

---

[5] *Id*. at 48:11-23.

[6] *Id*. at 50:1-7.

passenger. *Id*. at 445.   The Eighth Circuit noted that the driver was wearing a seatbelt, whereas the passenger was not, the driver was "able to anchor herself by grasping the steering wheel, which may have alleviated some of the impact," and the angle of impact differed between the two occupants, leading to different injuries.  *Id*.

Similarly, in *Perkins v. Volkswagen of Am., Inc.*, 596 F.2d 681 (5th Cir. 1979), plaintiff brought a products liability suit against defendant after he was injured when the front bumper of another vehicle penetrated the front panel of his vehicle.  The trial court granted defendant's motion for a directed verdict.  *Id*.  Plaintiff argued that the trial court erred in refusing to allow plaintiff to show the relative severity of injuries suffered by the other passengers in the vehicle.  *Id*.  In affirming the decision of the trial court to preclude plaintiffs' expert from testifying about the relative severity of the injuries of other occupants of the vehicle, the Fifth Circuit explained that "[b]y showing that the van's other occupants sustained only slight injuries, Perkins intended to promote the inference that, had the front panel of the van not been defective, Perkins would have been relatively uninjured."  *Id*.  The Fifth Circuit went on to hold that the trial court did not err in deciding that the evidence was irrelevant and inadmissible.  *Id*.

In *Cheek v. General Motors Corp.*, 1983 WL 8843 (E.D. La. January 31, 1989), the court precluded plaintiffs' expert from testifying about the less severe injuries sustained by a passenger in the car.  The court reasoned that through such testimony, plaintiff was seeking to infer to the jury that the alleged defect caused the severe injuries to plaintiff (who became a paraplegic as a result of the accident).  *Id*.   The court held that it would improper to use the evidence in this way and the evidence was, therefore, inadmissible.  *Id*.

Because what happened to the adults in the front seat during this accident is not the result of a substantially similar set of circumstances, evidence or argument that the adults were not

injured in the accident is not relevant to whether the children should have survived the accident or whether the Tribute and Embrace are defective.  Moreover, any evidence or argument related to the lack of injuries to the adults would mislead the jury and confuse the issues.  *See* Fed. R. Evid. 401 & 403.

### 5. Evidence or Argument That There Was Partial Latching of Embrace Should Be Excluded.

Plaintiffs should be precluded from offering any evidence or argument that there was partial latching of the Embrace carrier to the base prior to the accident.  Plaintiffs have no admissible evidence that there was partial latching.  They also have no evidence that it is even plausible in the real world for an Embrace infant seat to be positioned with only one latch in place and stay like this throughout the trip.

The physical evidence and testimony establish that the Embrace was fully latched at the time of the accident.  B.D.S.'s mother, Kayla Yeager, testified that she heard a click when she placed the carrier into the base that was already installed in the Mountaineer.[7]  B.D.S.'s grandmother, Carla Yeager, testified that she checked to make sure the carrier was latched to the base after B.D.S. was secured into the Embrace.[8]  Both Kayla and Carla Yeager testified that they drove for about an hour and a half in the vehicle before the subject crash.

There was no indication during the trip that a partial latch condition existed.  Moreover, the physical evidence shows that both wireform latches were latched at the time of the accident.

---

[7] *See* Kayla Yeager Deposition, Ex. 3 to Mot. to Exclude Opinions of William Munsell Regarding the Evenflo Embrace, at 195, Doc. No. 148-3.

[8] *See* Carla Yeager Deposition, Ex. 4 to Mot. to Exclude Opinions of William Munsell Regarding the Evenflo Embrace, at 74, Doc. No. 148-4.

Plaintiff's expert, Mr. Munsell, admits that there are stress marks on both wireform latches, evidencing severe loading from the accident.[9]

Plaintiffs' only evidence that there was any partial latching is the unsupported conclusion of William Munsell.  As further explained in Evenflo's motion to exclude the testimony of William Munsell pertaining to the Embrace, Mr. Munsell's conclusion is based on nothing more than his own unsupported statements, and should be excluded.  *See* Mot. to Exclude Opinions of William Munsell at pp. 9-19, Doc. No. 148.

Because Plaintiffs have no admissible evidence to support a theory of partial latching in the instant case, any reference to partial latching is lacking in foundation, unfairly prejudicial, and would mislead the jury and confuse the issues.  *See* Fed. R. Evid. 401, 403, 602.

### 6. Any Reference To Detachments During Sled Tests Of An Evenflo Embrace When The Tested Product Has A Different Design Component Should Be Excluded.

Plaintiffs should be precluded from offering any evidence or argument regarding any detachments of the carrier from the base during testing of an Evenflo Embrace where the tested product has a different design or components than the seat at issue in this case.

Plaintiff's mechanical engineering expert, William Munsell, cites to carrier detachments during Evenflo's testing program to attempt to support his claim of design defect.[10]  However, those tests were performed on Embrace seats with different designs and components.[11]  The first three tests he cites—H05866F, H05891F, and 11-5-449—were performed on Evenflo seats manufactured well before the subject seat.  Following the tests with detachments, Evenflo

---

[9] *See* Munsell Deposition, Ex. 1 to Mot. to Exclude Opinions of William Munsell Regarding the Evenflo Embrace at 79:4-80:1; 203:19-204:8, Doc. No. 148-1; *See also* Munsell Report., Ex. 2 to Mot. to Exclude Opinions of William Munsell Regarding the Evenflo Embrace at p. 3, Doc. No. 148-2.

[10] *See* Munsell Report, Ex. 2 to Mot. to Exclude Opinions of William Munsell Regarding the Evenflo Embrace at p. 4, Doc. No. 148-2.

[11] *See* Eric Dahle Report, Ex. 6 to Ziejewski motion at 3-4, Doc. No. 146-6.

implemented a design change, which incorporated a different spring in the release lever.  After the new spring design was implemented, no further separation issues occurred during testing.[12] Mr. Munsell admitted that he was unaware of this design change.  *See* Munsell Dep., Ex. 1 to this Mot. at 89-92.

The last test cited by Mr. Munsell, H05866R, was performed on an Evenflo Embrace with a different grade of steel in the latch component.  Following the test—and more than one year prior to the seat involved in this accident being manufactured—Evenflo implemented an engineering change to upgrade the steel used in the wireforms.  Embrace seats with the upgraded steel were tested prior to the date of manufacture of the subject seat.  There have been no instances of the wireform separating from the base after that change.[13]

Where, as here, the proponent seeks to introduce evidence of other incidents, the proponent must first establish that the other incidents occurred under substantially similar circumstances.  *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 699 (7th Cir. 2007).  This standard is necessary because "the probative force of evidence of other accidents decreases as the circumstances and conditions of the other accidents become less similar to the accident under condition."  *Id*.  There is also the risk of unfair prejudice and additional costs in terms of time and distraction.  *Id*; *see, e.g., Gardner v. Southern Ry. Systems*, 675 F.2d 949, 952 (7th Cir. 1982) (holding there was too much ambiguity surrounding the prior accident, and thus, "[t]hese facts could certainly lead a reasonable person to conclude that the danger of prejudice and delay from admitting such evidence would substantially outweigh its probative value").  Here, Plaintiffs have not met their burden of establishing similarity.  Nor could they—the subject seats are different.

---

[12] *Id*.

[13] *See* Expert Report of Eric Dahle, Ex. 6 to Motion to Exclude Opinions of Dr. Ziejewski, Doc. No. 146-6 at 3-5.

Because the testing referenced by Mr. Munsell involves Evenflo seats with different designs and latch components, introduction of this evidence would be irrelevant, unfairly prejudicial, and would tend to confuse the issues and mislead the jury.  It should be excluded. *See* Fed. R. Evid. 401, 403, 602.

      **7.**     **Any Reference to Patents for Chest Clip Designs That Have Not Been Tested or Used In the Real World Should Be Excluded.**

Plaintiffs should be precluded from offering any evidence or argument regarding chest clip designs that have not been tested or used in the real world.

Plaintiff's mechanical engineering expert, William Munsell, eschews objective scientific evidence that disproves his opinions—including sled testing, videos, and literature.  Instead, he points to two hearsay patent documents to support his opinions: 1) a patent that he authored for a child seat that was never fully designed, tested, manufactured, or used in the real world; and 2) a 2001 patent for a chest clip from another car seat manufacturer.  Mr. Munsell has no evidence that the competitor's patent was ever used in the market.[14]  If it was used, he has presented no evidence of how it performed.

Without adequate foundation to show that these alleged alternative designs have been used or tested or how they perform in the real world, these patents are inadmissible.  These hearsay documents are irrelevant, and any arguable relevance is greatly outweighed by unfair prejudice, confusion of the issues, and the risk of misleading the jury.[15]  *See* Fed. R. Evid. 401, 403, 602.

---

[14] *See* Munsell Deposition, Ex. 1 to Mot. to Exclude Opinions of William Munsell Regarding the Evenflo Tribute at 119-121; 152, Doc. No. 147-2.

[15] Patents are not scientific peer-reviewed documents, and there are many reasons that claims are made in patents, including business and legal reasons, that are divorced from engineering or science.  *See Van Arsdell Report*, Ex. 2 to Ziejewski motion, at 15, Doc. No. 146-2.

**8.      Any Reference to Latch Testing Performed by Mr. Munsell Should Be Excluded.**

Plaintiffs should be precluded from offering any evidence or argument regarding the latch testing performed by Mr. Munsell.[16]  Mr. Munsell made up this test procedure without regard to any recognized standard or protocol.  *See* Munsell Dep., Ex. 1 to Munsell Embrace Motion at 47, Doc. No. 148-1.  The fact that Munsell cannot demonstrate general acceptance of this test is fatal to its admissibility.  *See Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) (excluding an expert's opinion where "his theory is novel and unsupported by any article, text, study, scientific literature or scientific data produced by others in his field" and where the expert "presented no proof that his theory [was] generally accepted in the scientific community").

Mr. Munsell's latch tests should also be excluded because they purport to be representative of a partial latch that supposedly occurred on the day of the accident, yet they were not conducted under substantially similar conditions to those that existed at the time of the accident.  "[T]he proponent of experiments must establish a foundation for the evidence by demonstrating that the experiments were conducted under conditions that were similar to those that existed at the time of the accident."  *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1278 (7th Cir. 1988).  This foundational requirement is especially important when the evidence is proffered to show causation or the existence of a dangerous condition. *Id*. at 1268.  In such cases, the proponent must establish that "the conditions under which an experiment is performed [were] "substantially similar" to those surrounding the simulated event."  *United States v. Jackson*, 479 F.3d 485, 489 (7th Cir. 2007).

---

[16] Evenflo has moved to exclude the testimony of Mr. Munsell because, among other things, his latch testing has not been generally-accepted, has not been subjected to peer review, and is not the product of scientifically reliable methodology.  *See* Evenflo's Mot. To Exclude Opinions of William Munsell regarding the Evenflo Embrace, Doc. No. 148 at p. 9-19.  Evenflo incorporates by reference the arguments set out in its motion to exclude the testimony of Mr. Munsell.  *Id*.

Courts routinely exclude evidence of expert recreation testing where the proponent has not established substantial similarity between the testing conditions and the accident. *See, e.g., Krik v. Crane Co.*, 71 F. Supp. 3d 784, 792 (N.D. Ill. 2014) (excluding videos of expert's testing in asbestos exposure case where the expert "made no attempt to replicate the conditions experienced by Krik that may have led to his exposure to asbestos… Given the lack of a "fit" between the [tests] and the facts of this case, the Court finds that they would not assist the jury in reaching its verdict."); *Goodwin v. MTD Prod., Inc.*, 232 F.3d 600, 610 (7th Cir. 2000) (expert's test were properly excluded in lawnmower defect case where, in addition to being cumulative, the tests were irrelevant in that they "were performed with a different lawn mower, at a different location, in different mowing conditions, and ricocheted off a different house with different siding and foundation."); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1330 (5th Cir. 1996) (excluding videotape of expert's testing in forklift accident case where the model shown in the videotape "was not sufficiently similar to the forklift which caused the accident," and "involved highly technical information and ... differed in several respects from the forklift and the accident scene.").

In *Finchum*, the district court excluded two dynamic sled tests performed by the plaintiffs' expert. 57 F.3d 526, 530–31 (7th Cir. 1995). The sled tests differed from the accident conditions because the test dummies were unbelted and the testing depicted one dummy somersaulting backward. The Seventh Circuit held that these tests were properly excluded because they were highly prejudicial and would confuse the jury. The Court noted the persuasive nature of this type of evidence, and the potential for confusion to the jury—that is, the sled tests appeared so similar to the accident that differences in conditions would be highly prejudicial. Because the sled tests could give the suggestion that the plaintiffs flipped over

16

backwards during the crash, they were properly excluded. *Id*. ("The sled test was just similar enough to the Finchums' accident to confuse the jury and leave jurors with the prejudicial suggestion that the Finchums flipped over backwards during the crash.").

In *J.B. Hunt Transport, Inc., v. General Motors Corp.*, 243 F.3d 441 (8th Cir. 2001), the Eighth Circuit held that test evidence was properly excluded because "the conditions of the tests were too dissimilar to the present accident to be admissible." *Id.* at 445. There, the Plaintiff attempted to introduce evidence of tests conducted by the defendants in the 1960s on experimental, non-production seats to illustrate the defendants' knowledge of potential hazards. The Court held that such evidence could only be admitted if the tests were "conducted under conditions *substantially similar* to the actual conditions." *Id*. It held that the testing was properly excluded because it "would be both prejudicial to defendants and confusing to the jury." *Id*.

Mr. Munsell's homemade testing proceeds in three steps, each of which, standing alone, warrants exclusion. For the first step, he carefully set the carrier in the base, in a way that would purposely avoid latching the two front latches: "so I would set that in there and, you know, I would set the carrier into the base, purposely try to get it not to initially latch." *See Id*. at 47. However, the fact that Mr. Munsell can maneuver the carrier into a particular position to prevent latching is entirely irrelevant and unreliable if he cannot establish that his procedure mirrors normal use. Mr. Munsell does not even attempt to establish that his testing is consistent with normal use, instead stating that his opinion was only that a false latching situation was *possible*. *See* Munsell Dep. at 132, Doc. No. 148-1, ("I'm not saying that it won't engage given certain orientations and certain motion. That's not my opinion.").

17

Because Mr. Munsell "made no attempt to replicate the conditions experienced [in the accident]," his latch testing should be excluded. *Krik*, 71 F. Supp. 3d at 792.

For the second step, Mr. Munsell slowly lowered a weight onto the carrier, and then timed how long it took for the carrier to latch. *See* Munsell Dep. at 47, Doc. No. 148-1. This second step, too, does not replicate real world conditions. In the real world, either a caregiver will secure the infant in the carrier and then place the infant and the carrier onto the base, or she will place the carrier in the base and then spend some time securing the infant—a process which, by necessity, requires additional pressure on the carrier.[17] Mr. Munsell does not demonstrate that this slow addition of the weight resembles real world use. In addition, he has no evidence that the weight has the same weight distribution as an infant, or that it is an adequate substitute for a federally approved standard test dummy. In addition, after placement of the dummy, carrier and base do not move. In the real world they would move when the car drove down the road. There is no evidence that Mr. Munsell's carefully placed carrier would stay unlatched while the vehicle is in motion. These analytical gaps between Mr. Munsell's testing and real world experience would confuse and mislead the jury, and warrants exclusion of the testing. *See C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 837 (7th Cir. 2015) (testimony is properly excluded "[when] a district court "conclude[s] that there is simply too great an analytical gap between the data and opinion proffered").

Mr. Munsell's third step likewise warrants exclusion because it would serve only to confuse the jury. For his third step, Mr. Munsell compared the latching time of a sample Embrace with that of other seats—the Graco Snugride 35, the Goodbaby Asana 35 DLX,

---

[17] *See* Van Arsdell Report at 10, Doc. No. 146-2.

and the Britax B-Safe 35.  However, these are not true comparator products, as they have different upper weight limits (35 as opposed to 22 pounds).  *See* Van Arsdell Report at 12, Doc. No. 146-2.  These different weight ratings translate to heavier carriers.  *Id*.  While the Evenflo Embrace carrier is 7.4 pounds, the Graco Snugride carrier weighs 10.2 pounds (37% heavier than the Embrace), the Goodbaby Asana carrier weighs 9.2 pounds (24% heavier than the Embrace), and the Britax B-Safe carrier weighs 10.4 pounds (40.5% heavier than the Embrace).  *Id*.  These heavier carriers exert more force on the latch system, and it is therefore unsurprising that they latch quicker.  Mr. Munsell does not mention that the carriers on his comparator seats are 24% - 40% heavier than the subject Embrace.  Instead, he simply ignores it.  Because Mr. Munsell has not, and cannot, establish the required link between his data and the conclusion he reaches, his testimony would serve only to confuse the jury.  It should be excluded.  *Finchum*, 57 F.3d at 530–31 (sled testing properly excluded because different conditions would "confuse the jury and leave jurors with the prejudicial suggestion that the [plaintiffs] flipped over backwards during the crash.").

   Without any evaluation regarding whether his testing replicates real world conditions, Mr. Munsell can opine only that false latching is *possible* in a carefully rigged situation.  *See* Munsell Dep. at 132, Doc. No. 148-1 ("I'm not saying that it won't engage given certain orientations and certain motion.  That's not my opinion.").  He cannot connect his testing with real world activity.  Without this connection, Mr. Munsell's testimony is nothing more than "scientific guesswork," and would serve only to confuse the jury.  It should be excluded.  *See Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)

("[T]he courtroom is not the place for scientific guesswork, even of the inspired sort.  Law lags science; it does not lead it.").

> **9.     Any Reference to Pull Testing Performed by Mr. Munsell Should Be Excluded.**

Plaintiffs should be precluded from offering any evidence or argument regarding the pull testing performed by Mr. Munsell because the testing does not "fit" the facts of the case, and is irrelevant.[18]  To determine whether the testimony will assist the trier of fact, courts must consider whether the evidence will "assist the trier of fact to understand the evidence or determine a fact in issue."  *See Bowman for J.B. v. Int'l Bus. Machines Corp.*, No. 1:11-CV-0593 RLY-TAB, 2013 WL 12290828 (S.D. Ind. Aug. 16, 2013, Hon. Richard Young).  *See also Krik*, 71 F. Supp. 3d at 792 (granting motion in limine to exclude testing by plaintiff's expert and holding "[g]iven the lack of a "fit" between the [tests] and the facts of this case, the Court finds that they would not assist the jury in reaching its verdict.").  For an expert's testing to be admissible, the proponent must establish that the testing was conducted under conditions that were substantially similar to those that existed at the time of the accident.  *Nachtsheim*, 847 F.2d at 1278. [19]

For his pull testing, Mr. Munsell attached a test apparatus to a single latch on the Embrace.  He applied vertical force to the latch, and used a force gauge to measure the

---

[18] Evenflo has moved to exclude the testimony of Mr. Munsell because, among other things, his pull testing is not generally-accepted, has not been subjected to peer review, and is not the product of scientifically reliable methodology.  *See* Evenflo's Mot. To Exclude Opinions of William Munsell regarding Evenflo's Embrace, Doc. No. 148 at p. 9-19.  Evenflo incorporates by reference the arguments set out in its motion to exclude the testimony of Mr. Munsell.  *Id.*

[19] Mr. Munsell's pull testing is subject to this substantial similarity requirement because it is offered to establish that the exact condition observed in the testing occurred on the day of the accident.  *See Jackson*, 479 F.3d at 489-490 (the application of the substantial similarity requirement "always depends on the purpose for which the experiment is introduced.  So if the purpose is to recreate an event, the timing and physics of which are critical, courts will only admit evidence of experiments that are conducted under nearly identical conditions as the actual event.") (internal citations omitted).  "By contrast, where the purpose of the experiment is not to recreate events but simply to rebut or falsify the opposing party's sweeping hypothesis, the substantial similarity requirement is relaxed."  *Id.*  See *also Valentine v. CSX Transp., Inc.*, No. 1:09-CV-1432-JMS-MJD, 2011 WL 2066705, at *3 (S.D. Ind. May 25, 2011) ("Although a reenactment must be performed under conditions "substantially similar" to those surrounding the simulated event to be admissible, the substantial similarity requirement is weakened where such evidence is not actually being offered as a reenactment.") (internal citations omitted).

amount of force necessary to detach the single latch.  Using this testing, he concluded that a single wireform, on its own, was not sufficiently strong to withstand the forces in a foreseeable accident.  This fact is irrelevant—the Embrace is designed to be used with two wireform latches, not one.  *See* Munsell Dep., Ex. 1, at 60, Doc. No. 148-1.  Mr. Munsell admits that his testing did not include a scenario where both latches were fully engaged at the time of the accident.  *Id*. at 80.  Moreover, he admits that if the Embrace had been fully engaged and properly used, it likely would not have detached (absent activation of the red release lever).  *See Id*. at 38, 39, 67.

Because Mr. Munsell failed to consider use of the product as it was designed to be used, his opinions regarding detachment should be excluded.  *Goodwin*, 232 F.3d at 610 (expert's test were properly excluded in lawnmower defect case where the tests "were performed with a different lawn mower, at a different location, in different mowing conditions, and ricocheted off a different house with different siding and foundation.").

### 10.   Any Reference to Other Injuries, Incidents And Lawsuits Relating To The Tribute, Embrace Or Any Other Product Should Be Excluded.

Plaintiffs should be precluded from offering any evidence or argument related to other injuries, incidents, and lawsuits involving the Tribute, Embrace, or any other Evenflo product.[20] The burden is on the Plaintiffs to prove by competent, non-hearsay evidence that any such prior incident was substantially similar to the case at hand.  Plaintiffs have no such evidence with respect to the Embrace or Tribute.  Reference to incidents or suits involving other products is more obviously inadmissible.

The Seventh Circuit has held that before evidence of other accidents or injuries will be admitted, the proponent must establish that the other accidents or injuries occurred under

---

[20] There may be reference to the fact that Evenflo's experts have been paid in the past for their work on other cases. Any such reference should be limited and no implication should be permitted that Evenflo has numerous products with alleged defects.

substantially similar circumstances. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 699 (7th Cir. 2007). This standard is necessary because "the probative force of evidence of other accidents decreases as the circumstances and conditions of the other accidents become less similar to the accident under condition." *Id*. There is also the risk of unfair prejudice and additional court time and distraction of the jury. *Id*; *see, e.g., Gardner v. Southern Ry. Systems*, 675 F.2d 949, 952 (7th Cir. 1982) (holding there was too much ambiguity surrounding the prior accident, and thus, "[t]hese facts could certainly lead a reasonable person to conclude that the danger of prejudice and delay from admitting such evidence would substantially outweigh its probative value").

In this case, Plaintiffs have no competent evidence of any other injury in a substantially similar frontal collision involving a Tribute child seat or an Embrace infant seat. Thus, it is impossible for Plaintiffs to satisfy their burden for admissibility. For example, in his expert report, Mr. Munsell references only one non-injury incident report involving an Embrace.[21] Unlike the physical evidence in this case, which reveals that there is "stress whitening" around the wireforms on the base of the Embrace demonstrating that the carrier was attached to the base prior to the accident, the Evenflo investigator who examined the Embrace involved in the other incident noted that there were no stress whitening marks around either of the wireforms, and, therefore, concluded the carrier was not secured in the base prior to the accident. Thus, the incident report discussed by Mr. Munsell in his deposition is not substantially similar to the accident in this case.

Incidents involving child seats different from the Tribute and Embrace also are inadmissible. They are irrelevant and could lead to unfair prejudice, confusion of the issues, and

---

[21] *See* Munsell Expert Report, Ex. 2 to Mot. to Exclude Opinions of William Munsell Regarding Embrace at FN 12, Doc. No. 148-2. In his deposition, Mr. Munsell mentions another incident report but did not recall any details about that report. *See* Munsell Deposition, Ex. 1 at 65 to this motion. Based upon Evenflo's inspection of the Embrace in that second incident report, which was also a case in which there was no injury to the child, there was also no stress whitening around the wireforms and thus no evidence the carrier was attached to the base prior to the accident.

misleading the jury.  In *Chlopek v. Fed. Ins. Co.*, the Seventh Circuit held that the exclusion of evidence of other injuries involving the use of a somewhat similar device to the device used by plaintiffs was appropriate.  499 F.3d at 700.  Plaintiffs brought a products liability action against the manufacturer of a medical device, the Polar Care 300, which delivers cooling therapy to postoperative patients, and the district court found that the device was not defective.  *Id*. at 695. The court refused to admit accident reports related to the Polar Care 500, and it noted that plaintiffs failed to explain how any of the reported incidents was substantially similar to the incidents that occurred in this case.  *Id*. at 699.  Although the Polar Care 500 was similar to the Polar Care 300, the court noted that the injuries potentially caused by the Polar Care 500 could have confused the jury and unnecessarily prolonged the trial, and thus, the court properly excluded these accident reports.  *Id*. at 700.

Additionally, Plaintiffs should be precluded from offering evidence of dissimilar accidents involving the same products because this evidence is not relevant, and Plaintiffs cannot establish that the accidents are substantially similar to the accidents in this case.  In *Nachtsheim v. Beech Aircraft Corp.*, plaintiffs brought a products liability action against defendant, alleging negligence, strict liability, and failure to warn when estate's decedent was killed in an airplane crash.  847 F.2d 1261, 1263 (7th Cir. 1988).  The Seventh Circuit affirmed the district court's decision in favor of the manufacturer.  *Id*.  Plaintiff sought to introduce evidence of the "St. Anne accident" to compare it to decedent's accident.  *Id*. at 1269.  The Court stated that the plaintiffs must show that other accidents occurred under substantially similar circumstances before the evidence will be admitted, which is especially important in cases such as this where the evidence is proffered to show the existence of a dangerous condition or causation.  *Id*. at 1268.  Thus, the court held that it could not disturb the district court's conclusion that plaintiffs failed to

demonstrate sufficient similarity between the St. Anne accident and the decedent's accident to justify admission of the disputed testimony.  *Id*. at 1269.  The court noted that there are too few established facts to establish a comparison, and the admission of the evidence would create a risk of confusion of the issues.  *Id*.

Incident reports related to other vehicle crashes involving an Evenflo Tribute or Embrace in addition to containing hearsay within hearsay, are inadmissible because these incident reports contain information regarding accidents that are not substantially similar to this accident.

In *Chlopek v. Fed. Ins. Co.*, for example, the lower court excluded nine incident reports, holding that the reports were not substantially similar to plaintiffs' injuries, even though the reports were related to the same product used by plaintiffs, the Polar Care 300.  499 F.3d at 699. The dissimilarities included an injury to another body part, the type of injury was unclear or not of the same nature as the injury, or the nature of the complaint was different.  *Id*.  Thus, plaintiff's argument that the incident reports should not have been excluded was insufficient to support a reversal of the district court's decision.  *Id*.

Other Evenflo lawsuits also are not admissible.  Evenflo has not been involved in another lawsuit in which the seat(s) and injuries, accident modes, and other factors were substantially similar.  Courts frequently have held that previously filed lawsuits are not admissible.  *Taylor v. Indianapolis Metro. Police Dep't*, No. 2011 WL 2605654, at *5 (S.D. Ind. June 30, 2011) (holding that plaintiffs did not establish that the prior lawsuits or complaints were factually similar to the present case, and thus, the evidence was inadmissible).

Because Plaintiffs cannot meet their burden to prove by competent evidence that any other incident or lawsuit occurred under substantially similar circumstances, no evidence of prior incidents involving the Tribute child seat, Embrace infant seat, nor any other Evenflo product

24

should be admissible.  Any such evidence or argument is hearsay, lacking in foundation and would be irrelevant, unfairly prejudicial, mislead the jury, and confuse the issues.  *See* Fed. R. Evid. 401, 403, 602, & 802.

### 11. Evidence or Arguments Related to the Australian Study or the Four Case Reports Contained in the Study Should Be Excluded.

Plaintiffs should be precluded from offering any evidence or arguments related to the Australian Study[22] that was identified for the first time during Dr. Ziejewski's deposition (and not in his Rule 26 expert report) and on which he purports to rely.  According to Dr. Ziejewski, the Australian Study is evidence that the alleged defects in the Embrace and Tribute caused the fatal injuries to M.L.L.S. and B.D.S. because the Australian Study shows that this accident should have been survivable.[23]  The study is based upon data from crashes in Australia.  The study includes case reports on four severe car crashes in which children survived.[24]

The entire Australian Study should be excluded because it is inadmissible hearsay and hearsay within hearsay, there is a lack of proper foundation to admit the study, and Plaintiffs have failed to provide any evidence to demonstrate that the accidents described in the study's case reports are substantially similar to the accident in this case.  Additionally, the Australian Study is not relevant, would confuse the issues, and mislead the jury.  *See, e.g., Kelsay v. Consol. Rail Corp.*, 749 F.2d 437, 443-44 (7th Cir. 1984) (holding that by admitting evidence that is not substantially similar to the present case, the jury may receive evidence that is confusing, misleading, and potentially unfairly prejudicial to defendants); *see also Watts v. Schuh*, 2014 WL

---

[22] *See* Australian Study, "Effectiveness of Child Restraints The Australian Experience," published June 2002, Ex. 8 to Motion to Exclude Dr. Ziejewski, Doc. No. 146-8.

[23] *See* Ziejewski Deposition, Ex. 4 to Motion to Exclude Dr. Ziejewski at 107:11-108:18, Doc. No. 146-4.

[24] Australian Study at 43, Doc. No. 146-8.

1259946, at *2 (N.D. Ind. Mar. 26, 2014) (granting the motion *in limine* baring any case reports as substantive proof in their case-in-chief).

Reaching conclusions about causation based on case reports should be handled with caution because of the frequent lack of analysis in case reports. *Caraker v. Sandoz Pharm. Corp.*, 188 F. Supp. 2d 1026, 1035 (S.D. Ill. 2001) (citing *Glastetter v. Novartis Pharm. Corp.*, 107 F. Supp. 2d 1015, 1031 (E.D. Mo. 2000), aff'd, 252 F.3d 986 (8th Cir. 2001)). Courts should examine the facts of the case studies compared to the facts of the present case to determine whether the case studies are similar enough to warrant the admissibility of testimony related to the case studies. *Hartle v. FirstEnergy Generation Corp.*, 2014 WL 1317702, at *7 (W.D. Pa. Mar. 31, 2014); *see also Brumbaugh v. Sandoz Pharm. Corp.*, 77 F. Supp. 2d 1153, 1156 (D. Mont. 1999) (asserting that the most significant analytical defect of relying on case reports is that they "don't isolate and investigate the effects of alternative causation agents. . .[t]hey reflect reported data, not scientific methodology.").

For example, in *Caraker v. Sandoz Pharm. Corp.*, plaintiffs' experts relied on a variety of evidence, including case reports. 188 F. Supp. 2d at 1031. Plaintiff brought a products liability action against a drug manufacturer after she allegedly had a stroke from taking a drug manufactured by defendant. *Id*. at 1028-29. The manufacturer moved *in limine* to exclude Plaintiff's expert causation testimony, asserting among other things that the case reports were unreliable. *Id*. at 1031. The court examined the case reports and found that the case reports did not provide a reliable foundation for a causation opinion. *Id*. at 1034. The court noted there has to be enough specificity in the report to be substantially similar to the current case. *Id*. at 1035. The case reports used by plaintiffs' experts made little attempt to isolate or exclude possible

26

alternate causes, and they lacked adequate analysis.  *Id*.  Thus, the court rejected the plaintiffs' experts' opinions because they relied on the case reports to establish causation.  *Id*.

Plaintiffs cannot establish that the circumstances surrounding the four case reports cited by Dr. Ziejewski are substantially similar to the circumstances leading to the injuries to M.L.L.S. and B.D.S.  For example, Dr. Ziejewski did not know critical pieces of information regarding the accidents reported in the Australian Study, including:  1) whether any of the crashes involved children two years old or younger; 2) the direction of impact forces (i.e., frontal, side, rear, oblique); 3) where the children were seated in the vehicle; 4) the types and designs of child seats used; 5) whether a tether was available or used; 6) the presence, design and performance of any chest clip; and 7) the level of looseness or tightness in the connections and harnesses.[25]  Thus, Plaintiffs cannot prove that the circumstances reported in the study are substantially similar to the circumstances in this case.

The Australian Study is hearsay, hearsay within hearsay, lacking in foundation and would be irrelevant, unfairly prejudicial, mislead the jury, and confuse the issues.  *See* Fed. R. Evid. 401, 403, 602, & 802.

### 12.	Any Reference to Discovery Objections, Discovery Disputes, Court Orders or Similar Matters Should Be Excluded.

There have been no discovery disputes in this case, thus Evenflo does not expect there could be any argument or evidence offered at trial about discovery objections, disputes, court orders or similar issues.  However, to avoid any issues at trial, the Court should order that Plaintiffs should not offer any evidence or argument related to any alleged discovery objections or disputes in this case.  Any evidence or argument related to an alleged discovery issue is not relevant to the issues to be determined by the jury at trial, and therefore, should be excluded.

---

[25] *See* Ziejewski Deposition, Ex. 4 to Motion to Exclude Dr. Ziejewski at 134:14-135:8; 136:22-137:7-11; 137:24-138:25, Doc. No. 146-4.

*Hamdan v. Indiana Univ. Health N. Hosp., Inc.*, No. 1:13-CV-195-WTL-MJD, 2015 WL 3674087, at *8 (S.D. Ind. June 11, 2015) (granting defendants' motion *in limine* to exclude any discovery disputes).  Moreover, any probative value of such evidence or argument would be substantially outweighed by the danger of unfair prejudice, misleading the jury, and confusion of the issues, and therefore, should be excluded.  *See* Fed. R. Evid. 401 & 403.

**13.    Any Reference to the Financial Circumstances of Parties Should Be Excluded.**

Plaintiffs should be precluded from offering any evidence or argument related to the financial circumstances of Evenflo or Plaintiffs because such references would be irrelevant and unfairly prejudicial.  Evidence or testimony of a party's wealth is generally irrelevant to the issue of liability.  *Edson v. Dreyer & Reinbold, Inc.*, 2017 WL 2255954, at *5 (S.D. Ind. May 23, 2017) (holding that "[e]vidence concerning financial information has the potential to distract the jury from the essential issues of the case"); *Cunningham v. Masterwear, Inc.*, 2008 WL 754245, at *3 (S.D. Ind. Mar. 19, 2008), aff'd sub nom. *Cunningham v. Masterwear Corp.*, 569 F.3d 673 (7th Cir. 2009) (granting defendants' motion *in limine* to exclude defendant's financial condition because the relevancy of their financial condition was unclear).

Additionally, evidence or testimony of a party's lack of wealth is also irrelevant and should be excluded.  The Seventh Circuit has stated that a party is not allowed to put on evidence that he or she does not have enough money to pay a judgment.  *Kemezy v. Peters*, 79 F.3d 33, 97 (7th Cir. 1996).  Thus, testimony, evidence, or reference to financial condition is more prejudicial than probative and serves only to confuse and mislead the jury.  *See* Fed. R. Evid. 401 & 403.

14.     **Any Evidence or Argument Related to Insurance Coverage Should Be Excluded.**

Plaintiffs should be precluded from offering any evidence or argument related to any insurance coverage.  Federal Rule of Evidence 411 explains, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." *Miller v. Polaris Labs., LLC*, 2016 WL 1639087, at *6 (S.D. Ind. Apr. 26, 2016).

In fact, Evenflo is largely self-insured.  Thus, any reference to insurance would be irrelevant and unfairly prejudicial. *King v. Kramer*, 763 F.3d 635, 650 (7th Cir. 2014) ("Under Federal Rule of Evidence 411, when the "paramount question before the jury [i]s one of negligence, evidence of [liability] insurance" is not admissible . . .") (citing *King v. Harrington*, 447 F.3d 531, 533 (7th Cir.2006); *see also Estate of Gee ex rel. Beeman v. Bloomington Hosp.*, 2012 WL 639517, at *5 (S.D. Ind. Feb. 27, 2012) (rejecting plaintiff's argument that liability insurance falls under one of the exceptions to Rule 411).

15.     **Any Reference to Settlement Discussions Should Be Excluded.**

Plaintiffs should be precluded from offering any evidence or argument related to settlement discussions.  Evidence of conduct or statements made in compromise negotiations is not admissible at trial.  Federal Rule of Evidence 408 states that conduct or statements made during compromise negotiations are inadmissible.  The Seventh Circuit has held that the rule was adopted to encourage settlements without the fear that the statements may later be used as admissions of liability. *Kritikos v. Palmer Johnson, Inc.*, 821 F.2d 418, 423 (7th Cir. 1987).  It is well-settled that settlement discussions between parties are not admissible at trial. *Williams v. Lovchik*, 2012 WL 2930773, at *1 (S.D. Ind. July 18, 2012); *see also Estate of Gee ex rel.*

*Beeman v. Bloomington Hosp.*, 2012 WL 639517, at *6 (S.D. Ind. Feb. 27, 2012) (rejecting plaintiff's argument that settlement discussions are relevant for showing bias).

**16.      References to Size or Expertise of Law Firms Should Be Excluded.**

Plaintiffs should be precluded from offering any evidence or argument related to the location or size of the law firms representing Evenflo in this case or to the expertise of the lawyers or law firms. *See, e.g., Rohler v. Rolls-Royce N. Am., Inc.*, 2014 WL 3405872, at *3 (S.D. Ind. July 11, 2014) (granting defendant's motion *in limine* to exclude evidence regarding the size of the law firm). Such references are irrelevant to the issues to be determined by the jury and have the potential to create unfair prejudice, mislead the jury, and confuse the issues, and are, therefore, inadmissible. *See* Fed. R. Evid. 401 & 403.

**17.      References to Evenflo's Ownership or Shareholders Should Be Excluded.**

Plaintiffs should be precluded from offering any evidence or argument related to Evenflo's ownership or shareholders, including the nationality of any shareholders or owners. Evenflo presently is owned by a Chinese company. This was not true when the subject Tribute and Embrace were designed or manufactured. References to the nationality of the owner of Evenflo are irrelevant and would serve only to appeal to the jury's potential prejudice against foreign-owned corporations. *See, e.g., White v. Indiana Harbor Belt R. Co.*, 1998 WL 323625, at *3 (N.D. Ill. June 12, 1998) (granting defendants' motion *in limine* to exclude any evidence as to ownership, including anything regarding defendants' shareholders). They are therefore inadmissible. Moreover, such information has the potential to confuse the issues, mislead the jury, or be unfairly prejudicial. *See* Fed. R. Evid. 401 & 403.

18.     **Evidence or Argument Related to Alleged Inadequate Warnings or Instructions Should Be Excluded**

Plaintiffs have not designated any expert opinion that the warnings or instructions for the Tribute or the Embrace are inadequate.  Moreover, the Tribute and Embrace child seats at issue in this case were purchased used at a yard sale.  Plaintiffs never had or read the owner's manuals that came with the child seats.  Therefore, any evidence or argument about alleged inadequate warnings or instructions would be irrelevant, lacking in foundation, unfairly prejudicial, and should be excluded.  *See* Fed. R. Evid. 401, 403, & 602.

19.     **Testimony or Argument Related to Plaintiffs' Grief or Sorrow Should be Excluded**

Plaintiffs should be precluded from offering any testimony or argument of grief suffered as a result of the injuries and deaths of M.L.L.S. and B.D.S.  Damages for grief are not recoverable under Indiana law in a child wrongful death case.  Indiana's Child Wrongful Death Statute allows a plaintiff to recover damages for the loss of the child's services, the loss of the child's love and companionship, and damages related to the expenses of health care, funeral expenses, and psychological counseling.  Ind. Code § 34-23-2-1.  Grief is not a recoverable form of damages under the statute.

Indiana courts have held that the term "companionship" refers only to a type of love, care, and affection, and it does not mean grief or wounded feelings.  *See, e.g.,. Challenger Wrecker Mfg. Inc. v. Estate of Boundy*, 560 N.E.2d 94, 99 (Ind. Ct. App. 1990).  Allowing recovery for grief in a child wrongful death case under Indiana law would be inappropriate.  *See Hill-Jackson v. FAF, Inc.*, 808 F. Supp. 2d 1083, 1089 (S.D. Ind. 2011) (holding the Indiana Child Wrongful Death statute "precludes recovery for grief, sorrow, or bereavement suffered by anyone" as a result of the child's death).

31

Respectfully submitted,

/s/ Richard P. Cassetta
Dan H. Ball (admitted *pro hac vice*)
Richard P. Cassetta (admitted *pro hac vice*)
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 N. Broadway, Ste 3600
St. Louis, MO 63102
(314) 259-2200 Telephone
dhball@bryancave.com
richard.cassetta@bryancave.com


Larry R. Church
Marc Tawfik
McNeely Stephenson
318 Pearl Street,
Suite 200
New Albany, IN 47150
(812) 725-8224 Telephone
(317) 825-5205
larry.r.church@msth.com


*Counsel for Defendant, Evenflo Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15[h] day of June, 2018, the foregoing document was served by operation of the Court's electronic filing system on the following attorneys:

J. Anthony Goebel
GOEBEL LAW OFFICE
1034 Copperfield Drive
Georgetown, IN 47122

Richard L. Denney
Jason E. Robinson
DENNEY & BARRETT PC
870 Copperfield Drive
Norman, OK 73072-4147

Nicholas F. Stein
Amy Wheatley
810 E. Market Street
New Albany, IN 47150

/s/ Richard P. Cassetta
Richard P. Cassetta